Davis v. Town of Guilford.

55  351
60  253

55  351
68  578

55  351
72  672

SHERMAN W. DAVIS vs. THE TOWN OF GUILFORD.

New Haven Co., June T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The law disregards variances which, although they may magnify an injury and misstate attendant circumstances, neither raise any doubt in the mind of the defendant as to the charge which he is to meet, nor lead him to omit any matter of preparation for his defence.

A party having a good cause of action has a right to sue or refrain from suing at his pleasure, and an inquiry from the defendant, whether, in a certain event, he would not have refrained from suing is impertinent and inadmissible.

The law allows a town a reasonable time for knowledge of defects in a highway and a further reasonable time for making the necessary repairs; yet it requires of the town a reasonable supervision of highways, and a want of knowledge of a defect by its selectmen does not constitute a legal excuse for inaction if ignorance is the result of negligence in supervision.

If a defect is plain to the eye and has existed for a considerable time, the court would be justified in imputing to the town either negligent and therefore culpable ignorance in reference to it or culpable delay in repairing after actual knowledge. Held that such knowledge and negligence might be imputed where a defect in a road little used had existed for two months.

A town owes more of care to a road used much than to one used little; but its duty is to keep it in each case in a condition of reasonable safety.

The plaintiff was driving a pair of horses over a rough road, with a large load of hay and loose straw, on the top of which he was sitting, when by reason of a gully in the road, washed out by the rains, he was thrown to the ground and injured. The court below found that the load was properly placed and that the accident was caused by the condition of the road. Held that this court could not, upon the facts found, determine that the plaintiff could not safely have driven in that way over the road and that he brought the injury upon himself.

[Argued June 21st—decided October 21st, 1887.]

ACTION for an injury from a defect in a highway; brought to the Court of Common Pleas in New Haven County, and tried to the court before *Deming, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*H. G. Newton* and *C. K. Bush,* with whom was *C. Kleiner-* for the appellant.

*H. L. Hotchkiss,* for the appellee.

PARDEE, J. This is a complaint for injuries occasioned by a defect in a highway. The case was tried to the court and judgment rendered for the plaintiff. The defendant has appealed for the following reasons:

That the court erred in holding the plaintiff entitled to recover on the facts found; in imposing upon the defendant a duty greater than that required by law; in holding that on the facts found there was a defect in the highway for which the defendant was liable; in holding that the plaintiff's injury was caused by a defect in the highway for which the defendant was liable; in holding that the complaint was sufficiently proved and supported by the facts found to entitle the plaintiff to judgment; in holding that the plaintiff was not guilty of such negligence as would defeat his right to recover; in admitting the evidence as to the condition of the road being the subject of conversation among neighbors; in excluding each of the defendant's cross-questions to the plaintiff; and in admitting the testimony as to the gentleness of the plaintiff's horses.

The plaintiff was injured while descending a steep hill. The defendant had constructed two ridges or waterbreaks diagonally across the way near the top of the hill, for the purpose of turning water into gutters. Such breaks properly made and repaired are found to have been necessary at the place in question because rocks prevent the making of gutters above. The finding also is that "during June and July, 1886, the water had washed over the top of the hill

and down to the first break, making ruts through it where
the wagon wheels and the horses' feet had broken it away,
and from the first break had washed down in the center of
the road to the second break, the base of which had been
washed away and the height of the break increased by the
water, which at this point had turned off to the side of the
road.   In the afternoon of July 29th, 1886, the plaintiff
started to cart his last load of hay from his meadow, using
therefor the same horses and wagon he had been using all
the season.   The load consisted of meadow grass placed
upon the wagon in the same manner as loads of hay which
the plaintiff had carted down the hill during previous years
and during the same summer, except that a place was left on
the back part of the load upon which was placed about two
hundred pounds of rye straw rakings, the straw lapping a
little over the top and center of the load.   The entire load
weighed about two thousand pounds.   In driving, the plaint-
iff was seated upon the top of the load, as was his custom
in carting hay, and as is the custom of farmers in the
neighborhood.   The stake in front of the wagon was intend-
ed to prevent the load from sliding when descending the hill,
but the load was not bound to the wagon, the plaintiff having
never bound a load of hay or straw in carting down the hill
to his barns.   On reaching the top of the hill the plaintiff
caused an iron shoe to be attached to the wagon and placed
under the rear wheel to check the speed of the wagon in
descending the hill.   The plaintiff had carted loads of hay
and grain down this hill for about thirty years, and had carted
nearly fifty loads down the hill during the summer of 1886,
but had not before carted hay and grain or straw rakings
upon the same load.   In attempting to avoid the stones at
the top of the hill the wagon wheels slipped into a part of
the road washed by the rains through the upper break, caus-
ing the weight of the load to be thrown forward and giving
a greater impetus to the wagon, so that when the forward
wheels of the wagon struck the second or lower break, which
had been made abrupt by washing, it was with so great a
shock that the plaintiff was thrown forward to the ground

by the side of his horses, and directly in front of his forward wheels. He held on by the driving lines and was dragged a distance of ten or twelve feet before the horses were stopped. By this fall the plaintiff's knee, back and neck were injured, and he was incapacitated from work for a number of weeks, and had not fully recovered at the time of the trial in January, 1887. When the wagon struck the second break, throwing the plaintiff to the ground, about a hundred pounds of hay and straw came off the load with him. The load was properly placed upon the wagon, and the accident was caused by the washing of the highway on the hill and at the base of the lower break."

We cannot assent to the claim that there is a fatal variance between allegations and proof. The complaint points out to the defendant its duty in the premises—when, where, and wherein it failed in performance, the order of the events which terminated in the injury to the plaintiff, and the character and degree of that injury. Of course, in such a matter it is impossible that the proof should be a literal and exact reproduction of the allegations; therefore the law forgives variances which, although they may magnify the injury and misstate attendant circumstances, neither raise any doubt in the mind of the defendant as to the charge which he is required to meet nor induce him to omit any matter of preparation for defence. The complaint states that the plaintiff was riding upon a load of hay; that a wheel dropped into a hole; that the wagon was overturned; and that he and the hay were thrown upon the ground. The proof is that the wheel dropped into a hole, and that he was thrown to the ground; but that the wagon was not overturned, and only a portion of the load was thrown off. But all questions of importance to either party arise upon the allegations that the way was dangerously defective because of the hole; that the defendant is responsible for all resulting injuries; that the dropping of the wheel into the hole threw the plaintiff from the load to the ground; and that thereby he was hurt. These state a complete cause of action. The additional descriptive statements that the wagon was overturned, and that the

whole rather than a part of the load was thrown off are un-necessary. The plaintiff might himself safely disprove them and yet establish his right to receive, and the defendant's obligation to pay, damages. They neither increase nor change the burden of defence.

The plaintiff was injured in July, and instituted this action for damages in September, 1886. In the intervening August he with others made their complaint to the county commis-sioners, to the effect that the highway in question was out of repair, and asked that it might be repaired. The com-missioners denied the request, giving as the reason that a portion of it had been repaired and that the use of the re-mainder was so rare as not to call for any repairs. Upon the trial the plaintiff testified that at the time of the hearing he determined to sue the town if it did not treat him fairly and repair the road. Upon cross-examination he was asked if he intended to say that he should not have sued the town if he had succeeded before the commissioners. The question was excluded upon his objection ; and properly. Of course it was the privilege of the plaintiff to refrain from suing the town for his injuries if it would furnish him a safe highway for the future ; of course, too, his legal right to redress re-mains to him, even if revenge is an element in his effort to enforce it. The defendant's right in this part of the case is limited to proof, either that the plaintiff suffered no injury, or, if any, less than he claimed ; that he was more solicitous concerning the judgment than concerning the truth. But without effort the defendant had the benefit of the fact that the witness was also plaintiff. His interest and bias were open and unlimited. Neither party to a cause is entitled to a new trial because he is not permitted to prove that his adversary is interested in the result. If the evidence was offered for the purpose of proving that in the opinion of the plaintiff success in his effort before the commissioners to compel the defendant to repair the road would have been full and adequate compensation for the injuries to his person, it was properly rejected. By no possibility could it assist the court in properly measuring those injuries in money.

The road was not repaired, and the money value of the combined pleasure and material benefit which would have resulted to the plaintiff if it had been repaired, must of necessity remain unknown.

Upon this finding the defendant asks us to decide that the plaintiff brought this injury upon himself by negligence. But we are unable to declare that a judgment for him based upon such finding is erroneous; cannot say that he transcended the limits of care and prudence which might reasonably have been required of a person in his situation, by driving along the highway in question a pair of horses hitched to a wagon having a chained wheel, while sitting upon a load partly of hay and partly of straw, over a ton in weight. We cannot say that contributory negligence resides in the combination of the facts, namely, that the ton of hay was surmounted by two hundred pounds of loose straw and that the whole was unbound, in presence of the finding that the load was "properly," that is, carefully and prudently "placed," in view of all surrounding circumstances, and that the unsafe state of the way was wholly responsible for the injuries. We cannot say that as the result either of experience or observation, or of both, it has come to be generally believed by men of ordinary intelligence and prudence, that a man cannot safely drive as the plaintiff did over a road in a reasonably good condition.

Notwithstanding the objection of the defendant the court permitted the plaintiff to testify that he had heard some of his neighbors say to others of them during the five months preceding the injury, that the way was out of repair, as tending to prove that the defect was a matter of general knowledge, and as laying the foundation for an inference by the court that therefore there had been knowledge and negligence upon the part of the selectmen. For this the defendant appeals.

We are not called upon to justify the reception of this testimony. The finding is that about thirty days prior to the accident actual notice of the defect was given to a selectman. The record affords no ground for the supposition

that the defendant made any claim to the contrary. The plaintiff's case stood upon the solid foundation of actual notice. That he availed himself of the permission of the court to weaken it by attempting to impute knowledge should not be a reason for a new trial. The actual notice remains and must in any event control the case upon this point. Again, although it is true that a safe highway may be made unsafe in the space of a few minutes by an unusual rainfall; that a traveler may therefrom receive injuries before knowledge could by any possibility come to any selectman and therefore before any responsibility for such injuries could rest upon the town; and that the law allows a reasonable time for knowledge, and a further reasonable time for action, yet the law imposes upon the town reasonable supervision of the highway, and a want of knowledge by its selectmen of a defect does not constitute a legal excuse for inaction, if ignorance is the result of negligence in supervision. If the defect was plain to the eye of any person who would look, and had existed for a great length of time, the law would permit the court to impute either negligent and therefore culpable ignorance to the defendant in reference to it, or culpable delay in reparation after actual knowledge. The finding is that the defect had existed during the space of about two months previous to the injury. Upon this, without more, the court could lawfully impute knowledge and negligence. And in view of this, testimony as to what individuals said about the defect during this lapse of time must be quite without effect in the matter of imputed knowledge.

The finding is to the effect that, since the construction of a new road, a large part of the travelers who theretofore passed over the road in question have passed over the former, but that the old one is still used for business purposes to some extent, and in the summer to a considerable extent by parties driving for pleasure. It is the claim of the defendant that the court wrongfully imposed upon it the duty of keeping an almost disused road in such repair that the plaintiff could safely drive over it in the manner undertaken by him. Of course a town owes more of care to a road used

much than to one used little.   As to neither is it an insurer ; as to both its duty is to keep them in a condition of reasonable safety.   With less than this it may not invite one traveler or many to pass over any road.   Every traveler is entitled to a road along which he may pass in safety by the use of a reasonable degree of care and prudence, having in view his manner of use and the condition of the way.   The import of the finding is that, in view of the degree of use of the way, the defendant failed to keep it in a reasonable degree of safety.   There was use of it both for business and pleasure to a " considerable " extent; it was " unsafe for travel."   Upon this we cannot say that most men of intelligence and prudence would unite in the belief that the defendant reasonably and properly adjusted the degree of care to the degree of use.

The plaintiff was asked if the defendant paid him in repairing the road upon the hill in May, 1886.   Upon objection this was excluded.   Immediately thereafter the defendant was permitted to prove all work done by the plaintiff upon the road upon the hill, and all payments to him therefor during the five years immediately preceding July, 1886.   If it should be conceded that the court erred in the rejection it would seem that ample reparation immediately followed ; and it is both the privilege and the duty of the trier to correct a mistake if he can do it so speedily and completely as that no injury remains to any one.

There is no error in the judgment complained of.

In this opinion the other judges concurred.